IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD W. MCGUGAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:20-cv-00303 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| HAROLD W. CLARKE, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

_____

Ronald. W. McGugan ("McGugan" or "Plaintiff"), is a former Virginia inmate who was incarcerated at Pocahontas State Correctional Center ("PSCC") at the time his claims arose. McGugan, proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against numerous officials and correctional staff at PSCC, as well as three PSCC medical providers: Benny Mullins, M.D., Happy Smith, M.D., and Sue Yates, RN (collectively "Defendants"). This matter is before the court on Defendants' motion to dismiss. After reviewing the pleadings, the court concludes that McGugan's complaint fails to state a claim against Defendants Mullins and Smith, the motion to dismiss will be granted as to those defendants. The court concludes, however, that the motion to dismiss Defendant Yates is premature and cannot be decided until McGugan has had the opportunity to obtain discovery as to what role—if any—Yates may have played in relation to his claims. Defendant Yates's motion to dismiss will therefore be denied without prejudice.

I.

In a notarized complaint filed May 29, 2020, McGugan alleges that he experienced multiple seizures "of various kinds back[-]to[-]back" on July 2, 2019. (Compl. pg. 9 [ECF No.

1].) McGugan alleges that persons responding to his seizures (including Defendants) were intentionally physically abusive in their responses to his seizure event, in violation of McGugan's Eighth Amendment right to be free from cruel and unusual punishment.[1]

McGugan alleges that he reported the allegedly abusive treatment he received on July 2 to Defendant Mullins, and that Mullins saw the bruises McGugan claims to have received when Defendants (and others) responded to his seizure event. McGugan alleges that Mullins failed to provide adequate medical care and failed to report the abusive treatment and bruises to state and local police.

McGugan alleges that he also reported the abusive treatment he received on July 2 to Defendant Smith, and that he, too, saw McGugan's bruises. McGugan alleges that Smith failed to provide adequate medical care and failed to report the abusive treatment and bruises to state and local police.

McGugan makes conflicting allegations regarding the role and actions of Defendant Yates. In his complaint, McGugan alleges that Yates was "over" medical "all the way," and that she was made aware of the July 2 events by other nurses. McGugan alleges that he requested Yates view the video footage of the seizure event, but that she failed to do so. As with Mullins and Smith, McGugan charges that Yates failed to report the abusive treatment to state and local police. McGugan does not allege that Yates was personally present during his seizures, and, in fact, his allegations imply that she was not.

---

[1] McGugan alleges other violations of his Fifth, Eighth, and Fourteenth Amendment rights by other, non-medical staff. The legal sufficiency of those allegations are not before the court.

In his response to Defendants' motion to dismiss, McGugan argues that he was physically assaulted by a nurse during the response to his seizure event, but that he is uncertain whether this was Yates or a different nurse. He alleges that this nurse: smacked him; put a mask over his face while his tongue was bleeding and he was choking on blood; threatened him; instructed officers to tase him, which caused more severe damage; and told officers that McGugan was faking it and to restrain him, all of which caused McGugan severe physical, emotional, and psychological damage. McGugan is also uncertain whether there was more than one nurse involved. McGugan argues that he needs his medical records and video of the seizure event in order to identify the nurse(s).

Possibly relatedly, McGugan also alleges that Smith failed to arrange for adequate specialized neurological care for McGugan's carpal tunnel damage.[2] McGugan apparently was taken for off-site evaluation of his carpal tunnel on at least one occasion, but the evaluation may have been stymied by the fact that McGugan was wearing handcuffs during the evaluation.

Finally, McGugan alleges in a general and conclusory manner that unspecified individuals, or persons identified only as "they," yelled at him, threatened him, ordered him to stop resisting, and denied him medical care by: (1) refusing to send him to the hospital; (2) refusing to help him with the after-effects of the incident, including severe pains of various types; (3) failing to arrange for a neurologist to treat his carpal tunnel damage; and (4) denying their culpability in responding to McGugan's grievances. McGugan alleges that he continues

---

[2] It is unclear if McGugan is alleging that his wrist was injured during the seizure event, by Defendants (and others) in their response to his seizure event, or if his carpal tunnel was an unrelated, preexisting condition.

to suffer great pain in his wrist, that his hand does not work properly, and that he has other permanent injuries.

McGugan alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment, in that: (1) Mullins, Smith, and Yates, as well as Jane Doe Nurses 1 through 4, failed to provide him with adequate medical care in response to his seizure event and they were thereby deliberately indifferent to his serious medical needs; (2) Mullins, Smith, and Yates, along with other named defendants as well as John and Jane Doe defendants, failed to take disciplinary actions or other actions to report, stop, or correct persons who abused him during his seizure event; and (3) Yates, along with other named defendants as well as John and Jane Doe defendants, used physical force against McGugan during and after his seizures without need or provocation, and/or they failed to report abusive treatment to their supervisors or law enforcement. McGugan further alleges state law tort claims for negligence and assault and battery against Mullins, Smith, and Yates. McGugan requests damages in the amount of $100,000.00 from each Defendant, punitive damages, and additional compensation for psychiatric care, medical care, and emotional distress.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551

U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 127, 1278 (4th Cir.

1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## III.

In order to state an Eighth Amendment claim based on the denial of medical care, a plaintiff must demonstrate that the defendant's actions (or failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires a showing of two elements. First, the plaintiff must provide evidence showing that he suffered from an objectively serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that the requirement that a particular medical need be "serious" stems from the fact that "society does not expect that prisoners will have unqualified access to health care").

Second, to show deliberate indifference, the plaintiff must show that the defendant was subjectively aware of the need for medical attention, but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, the defendant's disregard for a plaintiff's medical condition must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013).

The medical needs that McGugan describes in his complaint are: (1) medical care that may have been necessitated by and during the course of the seizures McGugan experienced on July 2, 2019, including an alleged need to be transported to the hospital; (2) medical care that may have been necessitated by the bruises that McGugan suffered as a result of his seizures and/or the restraints applied during his seizures; and (3) medical care for carpal tunnel damage that may have occurred as a result of the seizures.

In reviewing Defendants' motion to dismiss, the court must distinguish between McGugan's inadequate medical care claims against Mullins and Smith and the inadequate medical care claims against Yates. The court will first examine the claims against Mullins and Smith.

McGugan does not allege that Mullins and Smith were present when McGugan experienced his seizures. Therefore, Mullins and Smith cannot have failed to provide any care that might have been necessitated while the seizures were happening. Moreover, there are no allegations to support McGugan's conclusory allegation that he should have been sent to the hospital even if Mullins and/or Smith had been aware of the seizure event at the time it was unfolding. Rather, McGugan alleges that he subsequently reported his bruises to Mullins and to Smith. McGugan alleges that Mullins and Smith each failed to provide adequate medical care in response to McGugan's report of bruises. McGugan also asserts that Smith failed to provide adequate care for carpal tunnel damage.

Regarding his bruises, McGugan fails to satisfy the first part of the test set forth in *Estelle*, in that an allegation of bruising, without more, does note state an objectively serious medical need. *See, e.g.*, *Abernathy v. Anderson*, 98 F.3d 1, 8 (1st Cir. 2020) (noting that cuts,

bruises, swelling, and some bleeding are not serious medical needs); *Ward v. Sutton*, No. 87-7319, 1987 WL 39065, at *1 (4th Cir. Nov. 25, 1987) (per curiam) (holding that a badly bruised back is not a serious medical need); *Sapp v. North Carolina Dep't of Corrections*, No. 3:12-cv-23-RJC, 2013 WL 2480667, at *4 (W.D.N.C. June 10, 2013) ("Bruising alone does not constitute a serious medical need.") (quoting *Reed v. Trasatti*, No. 12-3920, 2013 WL 275043, at *5 (D.N.J. Jan. 24, 2013)); *Adams v. Compton*, No. 7:04-cv-00258, 2005 WL 2006975, at *10 (W.D. Va. Aug. 17, 2005) (holding that various bruises, abrasions and a knot on the head are not a sufficiently serious medical condition). There is no indication that McGugan's bruises required any sort of medical treatment or that, if they did, that Mullins and/or Smith failed to provide him with appropriate medical care. Likewise, there is no indication that McGugan suffered from some underlying medical issue (such as hemophilia) which, coupled with bruising, would certainly represent an objectively serious medical need.

McGugan's allegations regarding a carpal tunnel injury that caused him to suffer great pain in his wrist, and that his hand does not work properly, likewise do not allege a serious medical condition. *Tensley-Bey v. Virginia*, No. Civ.A.00-1449-AM, 2002 WL 32615105, at *4 (E.D. Va. Apr.9, 2002) ("[S]ymptoms of carpal tunnel syndrome and bursitis do not appear to rise to the level of a serious medical condition"); *see also Green v. Senkowski*, 100 F. App'x 45, 46–47 (2d Cir. 2004) (holding that prison medical records did not support finding of serious medical condition despite prisoner's characterization of his wrist condition as "paralytic"); *Scott v. Clarke*, 64 F. Supp.3d 813, 818, 824 (W.D. Va. 2014) (holding that an inmate's carpal tunnel syndrome, together with her degenerative disc disease, chronic pain related to disc and

joint problems, incontinence, and chronic kidney disease showed that she had serious medical needs).

Even if McGugan's bruises and/or his carpal tunnel injury were construed as serious medical needs, McGugan's claims against Mullins and Smith fail to satisfy the second part of the *Estelle* test because McGugan has not alleged facts to show that either Mullins or Smith subjectively disregarded McGugan's medical needs, let alone in a manner so grossly incompetent, inadequate, or excessive so as to shock the conscience or be intolerable to fundamental fairness. *See Jackson*, 536 F. App'x at 357.

As for the carpal tunnel injury, McGugan says he was taken for an off-site evaluation on at least one occasion. (Compl. pg. 41 ¶ 5.) Nothing in McGugan's allegations suggest he actually needed to be treated by a neurologist for the carpal tunnel injury, or that Mullins and/or Smith failed to provide appropriate medical care. Accordingly, the court will grant Defendants' motion to dismiss McGugan's claims against Mullins and Smith for inadequate medical care.

## IV.

McGugan's second claim against Mullins and Smith is that they, along with Yates and other defendants, failed to take disciplinary actions or other actions to report, stop, or correct persons who abused him during his seizure event. Even assuming that such abuse occurred or warranted disciplinary action, McGugan has failed to allege any grounds to support a finding that either Mullins or Smith had a duty or the authority to take disciplinary action against unidentified persons who allegedly abused McGugan during his July 2, 2019 seizure event.

The court also notes that among the documents McGugan submitted in response to Defendants' motion is an informal grievance in which the assigned investigator informed McGugan that video of the seizure event had been reviewed and "there was nothing criminal involved." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss Attachment pg. 11, Oct. 22, 2020 [ECF No. 43-1].) Based on the investigator's corroborating conclusion that nothing criminal had occurred, there was no obvious reason for Mullins or Smith to make a police report, even if either of them is presumed to have had a duty to make such a report. Accordingly, the court will grant Defendants' motion to dismiss McGugan's claims against Mullins and Smith that are based on his theory of supervisory liability.

## V.

The motion to dismiss McGugan's claims against Yates is not ripe for decision at this juncture. McGugan's allegations regarding Yates are too tentative—including whether the person in question actually was Yates or a different nurse—to permit the court to rule on the motion to dismiss the claims against Yates. Although McGugan's complaint appears to allege that Yates was not present during the seizures, McGugan's response to Yates's motion to dismiss maintains that Yates *may* have been present and *may* have responded in a manner that violated his Eighth Amendment right to be free from cruel and unusual punishment.

In his complaint—as well as in his response to the motion to dismiss—McGugan alleges there may have been more than one nurse involved in the allegedly excessive response to his seizure. McGugan's complaint identifies four Jane Doe nurse defendants in addition to Yates. McGugan argues that he was physically assaulted by a nurse and that he needs to view video of the event in order to determine whether Yates was the nurse in question. McGugan

has filed a motion asking for discovery of the video of the seizure event, and prison officials' response to his grievances suggests that video was preserved. (*See id.; see also* Compl., Attachment pg. 1, May 29, 2020 [ECF No. 1-1].) McGugan also requested lists of employees who were on duty at PSCC on July 2, 2019, and their pictures. On February 8, 2021, Magistrate Judge Robert S. Ballou ordered defendants to produce a list of employees who were on duty on July 2, 2019, to facilitate McGugan's identification of the John/Jane Doe defendants. On February 22, 2021, non-medical defendants provided the list of non-medical staff on duty.

A motion to dismiss may be denied when discovery may resolve the basis for the motion, including the identity of a defendant. *See, e.g.*, *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 90–91 (2d Cir. 2007) (denying motion to dismiss because discovery was necessary to determine whether legislative defendants acted pursuant to or in violation of their statutory authority). As stated, it appears to the court that the video McGugan seeks may be available and that discovery of the video along with discovery as to the identities of medical staff on duty on July 2, 2019, may enable McGugan to identify and articulate whether he has claims against Yates and/or other nurses, and what those claims may be. For that reason, Yates's motion to dismiss is premature.

The court notes that federal courts do not favor claims alleged against "John Doe" defendants. But "John Doe" claims are "permissible when a defendant's identity is not known at the time the complaint is filed and plaintiff could identify the defendant through discovery." *Valentine v. Roanoke County Police Dept.*, No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011) (citing *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982)). In addition, "plaintiff[s] should be given an opportunity through discovery to identify the unknown

defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1361 (S.D. Fla. 2009). A claim against a "John Doe" defendant may be dismissed without prejudice if the person's identity cannot be determined through discovery. *Schiff*, 691 F.2d at 197-98. A plaintiff must be diligent in his efforts to identify the John Doe defendant, or else the claim against the John Doe defendant may be dismissed. *Attkisson v. Holder*, 925 F.3d 606, 627–28 (4th Cir. 2019). Once identified, the John Doe defendant should be substituted with the actual, named party.[3]

At this stage, the record as to McGugan's claims against Yates is simply too unclear, and too underdeveloped, to permit resolution of Yates's motion to dismiss. Yates's motion to dismiss will be denied without prejudice at this time. McGugan will be permitted to obtain discovery of available video of the July 2, 2019 seizure event and a list of medical employees on duty that day. McGugan may thereafter seek leave to amend his complaint if it is warranted by the discovery provided to him. Yates may renew her motion to dismiss at that time.

## VI.

In light of the dismissal of McGugan's federal claims against Defendants Mullins and Smith, the court declines to exercise jurisdiction over the state law tort claims alleged against

---

[3] When a plaintiff is able to discover the identity of an unnamed defendant, that defendant does not automatically become a party to the action. Instead, the plaintiff must amend his complaint to substitute in the newly named defendant. *Bruce v. Smith*, 581 F. Supp. 902, 905 (W.D. Va. 1984). Replacing a "John Doe" defendant with a named defendant "amounts to a change of parties" under Rule 15(c) of the Federal Rules of Civil Procedure. *Id.* In general, "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

- 13 -

them. *See* 28 U.S.C. § 1367(c)(3). McGugan's state law claims against these defendants will be dismissed without prejudice. *See id.*

## VII.

In conclusion, the court will grant Defendants' motion to dismiss McGugan's claims against Defendants Mullins and Smith. In accordance with the analysis above, the court will deny without prejudice Yates's motion to dismiss, subject to developments after McGugan obtains discovery of available video and medical staff on duty on July 2, 2019.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to McGugan and all counsel of record.

**ENTERED** this 27th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE